## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 08-80008-CIV-HURLEY/ HOPKINS

**RANDOLPH STARLING,**
        **plaintiff,**

**v.**

**BOARD OF COUNTY**
**COMMISSIONERS, et al.,**
        **defendants.**

_____/

### ORDER ADOPTING-in-PART & REJECTING-in-PART MAGISTRATE JUDGE'S REPORT & RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DE# 146], ORDER GRANTING BOTH MOTIONS FOR SUMMARY JUDGMENT [ DE# 50, 68] & DENYING AS MOOT OTHER RELATED MOTIONS [DE# 92, 99, 108, 135, 143, 144, 148, 154]

**THIS CAUSE** is before the court upon defendants' motions for summary judgment [DE# 50, 68]. These matters were previously referred to United States Magistrate Judge James Hopkins, pursuant to 28 U.S.C. §§ 636-39 and Rule 72 of the Federal Rules of Civil Procedure, for a recommended disposition [DE# 73].

On January 2, 2009, Magistrate Judge Hopkins filed a report and recommendation upon the motions. [DE# 146]. On January 15, 2009, plaintiff Randolph Starling filed his objections to the report and recommendation [DE# 147]. On January 16, 2009, the defendant Board of County Commissioners, Palm Beach County ["County"] filed its objections to the report [DE# 148], in which the defendant Ken Fischer, in his individual capacity has joined ["Fischer"] [DE# 149]. Defendant Ken Fischer, in his individual capacity, and Defendant County lodged further response to the plaintiff's objections on January 26 and 30, 2009 respectively [DE# 155, 159].

Having carefully reviewed the parties' objections to the Report, and pursuant to 28 U.S.C. § 636(b)(1)(C), having made a *de novo* determination with respect to those portions of the report to which written formal objection has been lodged, the court has determined to reject that portion of the report addressing the individual § 1983 liability of defendant Fischer on the first amendment retaliation claim, and to grant summary judgment in favor of defendant Fischer on this claim based on qualified immunity.  On the first amendment claim against the County, the court rejects that portion of the report addressing the County's municipal liability under *Monell.*  Instead finding insufficient evidence to create a genuine issue of fact on the plaintiff's ratification theory, the court shall grant summary judgment in favor of the County on this claim as well.

The court otherwise approves and adopts the Magistrate Judge's report as it relates to the procedural due process claims asserted against both defendants.

### I. Preface

Plaintiff Randolph Starling ("Starling"), a previously ranked Captain employed by the Palm Beach County Fire Department, claims that he was demoted within the department because he exercised his First Amendment right of freedom of intimate association.  Specifically, he claims that his direct supervisor, Deputy Chief Ken Fischer ("Fischer"), instigated an investigation into his intimate relationship with a subordinate co-worker, Carolyn Smith, which ultimately led to his demotion by Fire Administrator Herman Brice ("Brice"). Starling has sued the Board of County Commissioners, Palm Beach County ("the County") and Deputy Chief Fischer under 42 U. S. C. §1983, seeking an injunction restoring him to his former position, plus lost wages and other compensatory damages.  He seeks damages against Fischer in both his official and his individual capacity.

2

The defendants' pending summary judgment motions raise the following issues:

(1) whether Brice demoted Starling pursuant to a county policy, established by Brice in his capacity as Fire Administrator, which called for Starling's demotion in retaliation for engaging in protected associational conduct;[1] (2) whether Fischer, acting as "cat's paw" for Brice, instigated an investigation into trumped up misconduct charges against Starling to retaliate against him for exercising his right to a protected intimate association (an association which allegedly interfered with Fischer's personal love interests), and, if so, whether Fischer's conduct violated a "clearly established" constitutional right of which Fischer reasonably should have been aware, and (3) whether the County violated Starling's procedural due process rights by failing to give him a meaningful opportunity for name clearing hearing after placing false and stigmatizing information in his personnel file.

## II. Facts

Starling was hired as a firefighter with the Palm Beach County Fire Rescue Department ("the Department") in 1994, and was promoted to Captain in 2002. From May 2005 to January 2006, Starling was stationed as Rescue Captain at Station 42, where he reported to District Chief Ken Fischer. Under the then operative chain of command, Fischer reported to Battalion Chief Joe Coates, who reported to Division Chief Al Sierra, who reported to Deputy Chief Mike Southard,

---

[1] A local government can only be held liable under §1983 if a municipal "policy " or "custom" exists pursuant to which that government violated a plaintiff's constitutional rights. *Monell v Dept of Social Services of New York*, 436 U.S.658, 690-94 (1978); *McMillan v Monroe County, Ala. ,* 520 U.S. 781, 117 S. Ct. 1734, 138 L.Ed.2d 1 (1997). If a county official holds final policymaking authority for the county in the subject area of the alleged constitutional violation, that officer's decisions may constitute county policy. *McMillan v Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996), *aff'd sub. Nom McMillan v Monroe County, Ala.*, 520 U.S. 781, 117 S. Ct. 1734, 138 L.Ed.2d 1 (1997).

who reported to Fire Rescue Administrator Herman W. Brice.  Brice is the highest ranking employee at  Fire Rescue and the only person with authority to demote a Fire Rescue employee.

In  July,  2005, Starling,  began an intimate, extramarital  relationship with a subordinate co-worker, firefighter Carolyn Smith.  In October 2005, Starling moved into Smith's house.  Their co-habitation was well  known to family, friends and co-workers within the Department.  Shortly after he moved in with Smith,  Starling  learned that Fischer was using Ms. Smith's home as a meeting place for his own romantic trysts  with another county employee, Laurie  Porath ( a friend of Ms. Smith's).  According to plaintiff's complaint, Fischer  allegedly used  his superior authority over Smith to set up  this arrangement.  When Starling  insisted  that  Smith  end the arrangement – shortly after  learning  that  Fischer, through Ms. Porath, had solicited Ms. Smith for a "three way" sexual encounter involving  Ms. Smith, Ms. Porath and Fischer [Complaint ¶ 9]--Fischer allegedly retaliated by ordering  Starling to end his relationship with Smith, failing which Fischer promised to  do "everything in his power" to ensure that Starling  "lost his captain's bars." [Complaint ¶ 10].

Starling continued to pursue his relationship with Smith, ultimately marrying her in  June, 2006 (two months after his divorce became final).  In the meantime, on  January 11, 2006, Fischer issued an "Employee Development Form ("EDF") to Starling, essentially  a cautionary  note  with no disciplinary impact,   raising question on ceratin performance related issues, as well as his preoccupation with firefighter  Smith.

Two days later, on  January 13, 2006,  Starling  received a  notification and  acknowledgment of violation of rules and regulations arising  out of a   December 19, 2005 incident involving plaintiff's alleged failure to follow  protocol by discontinuing patient care prior to arrival at a hospital.   Plaintiff received a written reprimand for this incident.

On January 17, 2006, Captain Miller issued another notice of investigation into a failure to perform duty charge arising out of a January 6, 2006 episode in which plaintiff allegedly logged a two hour delay in reporting to duty zone.

On January 20, 2006, Captain Miller issued notice of investigation into Starling's alleged failure to report an incident which occurred in 2005 when a woman on a bicycle crossed the path of his fire rescue truck. On February 7, 2006, Starling gave two tape recorded statements in connection with the episode, stating that while exiting the fire station in his fire rescue truck, a woman riding a bicycle fell in front of his truck without making impact. He said he did not report the incident at the time because the woman did not want any help, and he decided to simply "let it go."

On February 13, 2006, Captain Miller issued a report regarding the bicycle incident, concluding that the evidence substantiated charges of misconduct, including failure to perform duty. On February 14, 2006, Capt Miller issued a report on the delay in reporting to zone incident, likewise concluding that the evidence substantiated the charge of failure to perform duty. At that time, Starling was issued notification and acknowledgment of violation of rules and regulations, placed on administrative leave and demoted from Captain to Firefighter/Paramedic.

On March 2, 2006, Brice held a grievance hearing regarding Starling's demotion. Brice ultimately demoted plaintiff based on a recommendation from senior staff (Deputy Chiefs Sheppard and Southard) on the failure to perform duty charges and denied the plaintiff's grievance.

On April 18, 2008, the plaintiff's union advised that it would not pursue arbitration of his demotion because the claim lacked merit. Plaintiff has not pursued any action against the union for breach of good faith duty of representation, nor has he filed any other lawsuit regarding the alleged

5

violation of his rights.

On November 27, 2007, Starling filed the instant complaint asserting that Fischer and the County violated his First Amendment right to intimate association by demoting him in retaliation for exercising his right to pursue an intimate relationship with firefighter Smith.  He also alleges that the defendants violated his procedural due process rights under the Fourteenth Amendment by placing false and stigmatizing information in his personnel file without giving him a fair opportunity for name clearing hearing.

### III. Discussion

### A. First Amendment Retaliation Claim

### 1. Defendant County

To prevail in his section §1983 claim based on first amendment retaliation, plaintiff must show (1) he engaged in protected associational activity; (2) he suffered an adverse action which would likely deter a person of ordinary firmness from continuing to engage in such activity; and (3) there is a causal relationship between the retaliatory action and the protected activity, i.e. such activity was a "substantial" or "motivating" factor in the County's decision to demote him. *Bennett v Hendrix*, 423 F.3d 1247 (11th Cir. 2005); *Thaddeus-X v Blatter*, 175 F.3d 378 (6th Cir. 1999).

In addition, since municipalities are not liable for the constitutional torts of their employees unless those employees acted pursuant to official policy, *Monell,* 436 U.S. at 663 n. 7 (1978), in order to establish the County's liability under § 1983 plaintiff must further show that the alleged constitutional violation occurred (1) pursuant to an official County policy, (2) as the result of a policy decision by a final County decision maker, or (3) as a result of a custom so ingrained in County operations as to acquire the force of official County policy. *Libmen v City of Avondale*

*Estates*, 190 Fed Appx. 774 (11th Cir. 2006)(unpub);  *Denno v School Bd of Volusia County, Fla.,* 218 F.3d 1267 (11th Cir. 2000).[2]

In other words,  to withstand summary judgment on his § 1983 first amendment claim against the County, Starling  must  first adduce  facts sufficient to persuade a reasonable jury that the County, through its policymakers, formulated or had constructive knowledge of an official policy that sanctioned or encouraged a deprivation of plaintiff's associational  rights protected by the United States Constitution.  *Webster v City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

A decision by a government official may be enough to establish unconstitutional  municipal policy where the official accepts a recommendation of a subordinate,  knowing of and ratifying improper  motives which underlie the recommendation.  *Milam v City of San Antonio*, 113 Fed. Appx.  622, 626 (5th Cir. 2004). As explained by the Supreme Court in *St. Louis v.  Prapotnick*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L.Ed.2d 197  (1988):

> [T]he authority to make municipal policy is necessarily the authority to make final policy (citations omitted).  When an official's discretionary decisions are constrained by policies  not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.   Similarly,  when a subordinate's  decision is subject to review by the   municipality's authorized policymakers,  they have retained the authority to measure the official's conduct for

---

[2]The Eleventh Circuit has defined  "policy" as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality, or created by an official of such rank that he or she  could be said to be acting on behalf of the municipality.  *Wakefield v City of Pembroke Pines*, 269 Fed Appx 936 (11th Cir. 2008)(unpub), citing *Sewell v Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

A "custom," on the other hand, is defined as "a practice that is so settled and permanent that it takes on the force of law."  *Id.*  To establish municipal liability on the basis of a custom, it is generally necessary to show a "persistent and widespread" practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the municipality; random acts or isolated incidents normally are insufficient.  *Church v City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994).
.

conformance with their policies.   If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Starling apparently relies on this ratification theory here, contending that the County approved and adopted unconstitutional action of Fischer through Brice's decision to approve the demotion knowing that Fischer was involved in instigating the investigations which led to the disciplinary action and knowing that Fischer had complaints about Starling's relationship with Smith.

Although Brice denies having any knowledge of Fischer's participation in the investigations or alleged retaliatory motive toward Starling, and denies even knowing that Starling was dating Smith at the time he made the decision to demote him, there is some evidence suggesting he may have been on notice of the relationship and of Fischer's involvement in precipitating the charges leading to the demotion. In this regard, Helen Shattle, Starling's mother, testified in deposition that she met with Fire Administrator Brice and Deputy Chief Southard to discuss the reasons for her son's demotion. She said Brice and Southard told her that Starling was being demoted for "conduct unbecoming an officer," based on "numerous things filed by Ken Fischer in regards to [Starling-Smith] relationship," as well as lying throughout the course of the investigation into the misconduct charges.

She indicated that Southard initially brought up the issue of Starling's relationship with Smith, noting it had been ongoing for some time and that Starling was visiting Smith's house during the "out of zone" incident when he was supposed to be on duty. She also testified that while Brice confessed that he thought the double demotion was "too harsh," he had been presented with "condemning" evidence from Capt. Miller and "someone named Shepherd and Sierra and Fischer,"

8

and that he had to rely on the judgment of his staff.

Although this testimony, if believed, is some evidence suggesting Brice was at least on notice of Fisher's involvement in the investigation which led his senior staff to make the demotion recommendation, it does not create a fact issue on the material question of whether Brice knew or had constructive knowledge of Fischer's alleged retaliatory motive for instigating the charges, i.e. there is no evidence that Brice was aware of the personal conflict between Fischer and Starling over Starling's alleged interference with Fischer's romantic activities with Ms. Porath and sexual overtures to Ms. Porath and Ms. Smith and no evidence that Brice was aware of Fischer's alleged threat to do "everything in his power" to take away Starling's "captain bars" unless Starling ended his relationship with Smith. In other words, there is no evidence from which it could be reasonably inferred that Brice knew of and ratified any unconstitutional motive attributable to Fischer.

There is nothing in Capt. Miller's reports which suggested such a retaliatory motive, and no other evidence suggesting that Brice might have learned of Fischer's alleged improper motives from some other source. On this record, Brice's adoption of his deputy chief's recommendations cannot constitute unconstitutional county policy, even if Fischer triggered or participated in the investigations and acted on retaliatory motives in pressing the charges or in persuading the deputy chiefs to act upon them. *Campbell v Rainbow City, Ala.*, 434 F.3d 1306 (11th Cir. 2006).

As explained by the Eleventh Circuit in *Gattis v Brice*, 136 F.3d 724, 727 (11th Cir. 1998), another 1983 first amendment retaliation claim which involved Herman Brice acting as "policy maker" for the Palm Beach County Fire Rescue Department County:

> A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker "approve[s] a subordinate's decision and the basis for it. *City of St. Louis v Praprotnik*, 485 U.S.

112, 127, 108 S. Ct. 915, 926, 99 Led.2d 107 (1988).  Gattis must therefore present evidence that Administrator Brice  not only accepted the recommendation of his deputy chiefs, but knew of and ratified the improper motives behind their recommendation.  *See Hill v Clifton*, 74 F.3d 1150, 1152 (1996).  There is nothing in the record that suggests Chief Brice was aware of any such motives on the part of Chiefs  Koester and  Iacona.  As mentioned *supra*, the evaluations  themselves contain nothing retaliatory,  and there is nothing to suggest that Brice learned of improper motives from other sources.   Brice's adoption of the deputy chief's recommendation therefore cannot constitute unconstitutional  county policy even if the chiefs  did act upon retaliatory motives in making their evaluations.

The court  similarly  finds insufficient  evidence to create a fact issue on the causation element of  plaintiff's municipal liability ratification theory against the County, and in this respect departs from the report and recommendation of the Magistrate Judge which sustained his  first amendment  claim against the County on the strength of this theory, citing Shattle's testimony. [3] *See  Stimpson  v  City of  Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999)(even assuming reasonable jury could find discriminatory animus on part of city in recommending termination of police officer, causal link between that animus was broken by civil service board's hearing and independent decision to  actually terminate her, absent evidence that city's alleged discriminatory animus influenced decision, or that board acted as "cat's paw" or rubber stamp for city's recommendation).

---

[3]   At best, Shattle's testimony suggests that Brice was aware of allegations involving Starling's unauthorized side  trips  to Smith's home during working hours and was aware that Fischer may have been the source of  these allegations.  This is not reasonably susceptible to the inference that Brice knew Fischer wanted to interfere with Starling's relationship with Smith to retaliate against him for interfering with his own romantic relationship with Ms. Porath, or his own intentions toward Ms. Smith.   It simply suggests that the  demotion was in part recommended based on  allegations of employee  frolicking  on company time.

### 2. The Defendant Fischer

#### a. Official Capacity Claim

Only a final policy maker can be liable in an official capacity. *White v Thompson*, 2008 WL 4823988 (11th Cir. 2008). Because there is no evidence that Fischer acted as a policy maker at any relevant time here, liability cannot be imputed against him under §1983 in an official capacity. *Kelley v City of Wake Village, Texas*, 264 Fed Appx 437 (5th Cir. 2008)(unpub). Accordingly, the court shall grant Fischer's motion for summary judgment on the §1983 claims lodged against him in his official capacity.

#### b. Individual Capacity Claim

As to the first amendment claim asserted against defendant Fischer in his individual capacity, plaintiff correctly notes that the "cat's paw" theory is potentially a basis for individual subordinate employee liability in §1983 cases. *Land v Dietz*, 276 Fed. Appx. 384 (5th Cir. 2008)(unpub). Further, the court agrees that the evidence suggesting Fisher's role as instigator of the misconduct charges leading to Starling's demotion creates a potential premise for his individual liability under § 1983, even though there is insufficient evidence to withstand summary judgment on the County's municipal liability for this conduct. *See e.g. Strahan v Kirkland*, 287 F.3d 821 (9th Cir. 2002)(in First Amendment retaliation cases by public employees, even if ultimate decision maker can show that adverse action was not in retaliation for protected conduct, a subordinate with a retaliatory motive can be liable if an improper motive set in motion events leading to termination that would otherwise not occur).

To this extent, the court's rejects the Magistrate Judge's recommended disposition of the individual claims against Fischer. This requires the court to reach the merits of Fisher's qualified

immunity defense, an issue raised by his summary judgment motion.

Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. The doctrine shields government officials from individual liability to the extent that "their conduct does not violate clearly established... constitutional rights rights of which a reasonable person would have known." *Chesser v Sparks*, 248 F.3d 1117 (11th Cir. 2001), citing *Harlow v Fitzgerald*, 457 U.S. 800 (1982). This approach is designed to provide protection to all but the plainly incompetent, or those who knowingly violate the law. *See Patel v Searles,* 305 F.3d 130, 138 (2d Cir. 2002).

Evaluating the defense involves a two step inquiry: First, the court must determine whether the facts plaintiff has alleged or shown make out a violation of a constitutional right. Second, the court must determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Chesser* at 1122. [4]

For a right to be "clearly established," controlling precedent must recognize the right in a "concrete and factually defined context.*" Id.,* citing *Lassiter v Ala. A & M Univ., Bd of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)(*en banc*). In this case, the court finds that the purported constitutional right is not "clearly established."

The Supreme Court has held that "certain kinds of personal bonds," *Roberts v United States*

---

[4] While it may often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Rather, the district court retains discretion to decide which of these two prongs should be addressed first in light of the circumstances of the particular case. *Pearson v Callahan*, _____ S. Ct. _____, 2009 WL 128768 at *9 ( January 21, 2009)(overruling *Saucier v Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).

*Jaycees*, 468 U.S. 609, 618, 104 S. Ct. 3244, 82 L.Ed.2d 462 (1984) and "certain [kinds of] intimate conduct," *Lawrence v Texas*, 539 U.S. 558, 562, 123 S. Ct. 2472, 156 L.Ed.2d 508 (2003) are protected by the substantive component of the Due Process Clause.  Whether subsumed under the right to intimate association, *see Roberts*, or right to privacy, *see Lawrence*, the Court has consistently recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such  relationships  in safeguarding the individual  freedom that is central to our constitutional scheme." *Roberts*, 468 U.S. at 617-18, 104 S. Ct. 3244.  *See Lawrence*, 539 U.S. at 567, 123 S. Ct. 2472 ("When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring.").  Moreover, the right to intimate association is not limited to familial relationships but includes relationships characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain  the affiliation, and seclusion  from others in critical aspects of the relationship." *Roberts,* 468 U.S. at 620, 104 S. Ct. 3244.

However, the Court has not expressly decided whether this right applies to  adulterous sexual relationships. [5]   At the same time,  the Courts of Appeal  continue  to debate the sweep of constitutional protection over private sexual  matters in the wake of *Lawrence*.  *Compare  Williams v Morgan*, 478 F.3d 1316 (11th Cir. 2007)(rejecting notion of fundamental  right to sexual privacy and applying rational basis scrutiny to statute prohibiting commercial distribution of sexual  devices) *with Reliable Consultants, Inc. v Earle*, 517 F.3d 738 (5th Cir. 2008)(state interest in "public

_____

[5]  *Cf. City of North Muskegon v Briggs*, 473 U.S. 909, 910, 105 S. Ct. 3535, 87 L. Ed.2d 659 (1985)(White, J., dissenting from denial  of certiorari)(observing that courts have been divided over whether adulterous  sexual relations were constitutionally protected in a way that would forbid public employers from disciplining their employees for such relations).

morality" cannot justify a law that regulates an individual's private sexual conduct involving sexual devices).  And, while some courts have  recognized protected rights of intimate association over unmarried, long term relationships, *Christensen v County of Boone, Illinois*, 483 F.3d 454 (7th Cir. 2007), others  maintain that the First Amendment's protection over intimate associations does not encompass adulterous relationships.  *Beecham v Henderson County, Tenn*., 422 F.3d 372 (6th Cir. 2005).  The Eleventh Circuit has not yet  spoken to this precise issue.

In addition, courts have historically recognized that rights of intimate association and marriage are not absolute, and may appropriately give way in the government employment context where the exercise of the right creates unreasonable interference or impediment to the effective functioning of the public office.  *See e.g. Patches v City of Phoenix*, 68 Fed. Appx. 772 (9th Cir. 2003)(unpub)(sexual relations among officers in police department may be appropriate matter of inquiry in light of possible adverse effect on morale, assignments, and command subordinate relationship), *citing Thorne v City of El Segundo*, 726 F.2d 459 (9th Cir. 1983); *Shawgo v Spradlin*, 701 F.2d 470 (5th Cir. 1983)(disciplinary action against two police officers for co- habitation did not violate privacy interests  in light of rational relation between exigencies of department discipline and forbidding members of quasi military unit to co-habitate ); *McCabe v Sharrett*, 12 F.3d 1558 (11th Cir. 1994)(transfer of police chief secretary after marriage to police officer did not violate associational right of secretary regardless of legal standard that applied).  *See also Flaskamp v Dearborn Public Schools*, 385 F.3d 935 (6th Cir. 2004)(school board's decision to deny tenure to teacher for having an alleged intimate relationship with former high school student within nine months of student's graduation did not directly and substantially affect teacher's right of intimate association).

With this background, the court need not decide whether Starling's relationship with Smith – an initially adulterous relationship between a superior and subordinate employee in a quasi-military employment hierarchy – constituted the kind of intimate association protected by the First Amendment. It suffices that the contours of the asserted right of intimate association were not so clearly established at the time of the alleged violation that a reasonable person in Fischer's position would have known that his challenged conduct was illegal. Accordingly, the court concludes that defendant Fisher is entitled to qualified immunity on plaintiff's first amendment retaliation claim. *Compare Bates v Bigger*, 56 Fed. Appx. 527 (2d Cir. 2002)(unpub.)(whether deputy sheriffs' extramarital intimate relationship was entitled to protection under First Amendment right to intimate association was not clearly established, entitling supervisor to qualified immunity on §1983 claim for retaliation based on that relationship) *with Cameron v Grainger County*, 274 Fed Appx 437 (6th Cir. 2008)(unpub)(no qualified immunity for Circuit Court Clerk for firing Deputy court clerk, where it was clearly established at the time of firing that the clerk had a first amendment right to intimate association based on a marital relationship, and clerk alleged that she had been fired for marrying into a family politically opposed to the re-election of the Clerk of Court).

## Conclusion

With the exception of the foregoing exceptions and modifications, the Magistrate Judge's report and recommendation on the defendants' motions for summary judgment is otherwise approved and adopted in all respects.

It is accordingly **ORDERED AND ADJUDGED**:

1. On plaintiff's procedural due process claim alleging failure to provide a meaningful

Case No.: 08-80008-CIV-HURLEY/HOPKINS
Order Adopting Magistrate's Report and Recommendation

opportunity for name clearing hearing (Count 1), the defendants' motions for  summary judgment

[DE# 50, 68] are  **GRANTED**.

    2.  On plaintiff's  first  amendment  retaliation claim asserted under 42 U.S.C. § 1983 (Count

2), the defendants' motions for summary judgment [DE# 50, 68] are **GRANTED.**

    3.  Final summary judgment in favor of both defendants shall issue by separate order of the

court in accordance with Rule 58.

    4.  In light of the foregoing, the parties' various related motions to strike and other associated

motions [DE# 92, 99, 108, 135,  143, 144, 148, 154 ] are **DENIED as MOOT**.

    **DONE** and  **SIGNED**  in Chambers at West Palm  Beach,  Florida this 31st day of  January,

2009.


Daniel T. K. Hurley
United States District Judge


cc. All counsel

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts